UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IRINA KRYLOVA,

    Plaintiff,

    v.

GENENTECH INC.,

    Defendant.

                                         /

No. C 12-4120 PJH

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

Defendant's motion for summary judgment came on for hearing before this court on March 5, 2014. Plaintiff Irina Krylova ("plaintiff") appeared through her counsel, Richard Rogers. Defendant Genentech Inc. ("defendant" or "Genentech") appeared through its counsel, Lynn Hermle and Allison Giese. Having read the papers filed in conjunction with the motion and carefully considered the arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS defendant's motion as follows.

## BACKGROUND

This is an employment discrimination case. While the parties present competing versions of the relevant facts, they do agree that plaintiff was employed by defendant as a senior research associate from May 2007 until her termination on July 23, 2009. See First Amended Complaint ("FAC"), ¶ 3-4.

Neither the FAC nor plaintiff's opposition brief contain many of the facts relevant to plaintiff's claims. Instead, plaintiff has attached to her opposition brief a declaration setting forth most of the relevant allegations. See Dkt. 59. In her declaration, plaintiff alleges that she "had a stellar record of scientific achievements" prior to her work at Genentech. Id., ¶ 3. Plaintiff then alleges that, when she applied to Genentech, she excluded any reference to her "15 years of experience working in Russia as well as the dates of [her] first degrees . . . out of concern for age discrimination." Id., ¶ 6. Plaintiff applied for a "Research

1

1  Associate" position at Genentech, and she makes clear that the title of the position was
2  changed to "Senior Research Associate" only after she was offered the job. Id., ¶ 7.
3  Plaintiff points to this as proof that Genentech was not necessarily looking to hire a "mature
4  person."

5  Plaintiff alleges that, during the first few months of her employment, her supervisor
6  (Rami Hannoush) "lavished praise on" her. Dkt. 59, ¶ 8. However, '[i]n the end of July or
7  maybe in August 2007," Hannoush "discovered that [plaintiff] had adult children aged 24
8  and 26." Id., ¶ 9. Plaintiff claims that Hannoush "appeared shocked" upon learning the
9  ages of her children. Plaintiff is "over 50," but claims to have been "told by other people"
10 that she looks to be "in [her] 30s." Id., ¶ 6. Plaintiff further alleges that, soon after
11 Hannoush learned about her adult children, "he started to yell" at her during meetings, and
12 "to look for every error on [her] part, perceived or real." Id., ¶ 9.

13 For instance, in December 2007, plaintiff received her first performance review from
14 Hannoush. Dkt. 59, ¶ 12. Plaintiff alleges that, even though Hannoush "praised" her work
15 in the review, he still gave her an overall rating of "partially meets expectations." Id.
16 Plaintiff "strongly disagreed" with the assessment and left comments to that effect in the
17 "employee comment" section of the review. Id., ¶ 13. Plaintiff alleges that Hannoush "got
18 furious" about the comments and "angrily requested" that she remove them. Id. Plaintiff
19 ultimately removed the comments, because she was "terrified" of Hannoush's threat that
20 she could lose her job if the comments were not removed. Id.

21 After the 2007 review, plaintiff created a "performance management tool" to keep
22 track of Hannoush's expectations, in the hopes that she would obtain a better rating in her
23 2008 review. Dkt. 59, ¶ 16. Plaintiff claims that she "fulfilled every single goal, and met all
24 the deadlines," but that Hannoush still "found faults in the 'soft' goals." Id., ¶ 17. Plaintiff
25 claims that Hannoush held other employees to "different standards," and "over-scrutinized"
26 and "yelled at" plaintiff. Id., ¶ 18.

27 Plaintiff then alleges one age-related comment made by Hannoush. Plaintiff claims
28 that Hannoush stated that "his being a young manager and [plaintiff] being older than him

2

does not preclude him from being an efficient manager of an older person." Dkt. 59, ¶ 23.

Plaintiff alleges that Hannoush "wanted her out" after learning of her adult children, and on June 17, 2008, Hannoush told her to "look for a job outside of Genentech." Dkt. 59, ¶ 24. However, while Hannoush was allegedly "trying to prove [her] poor performance," plaintiff claims that other managers at Genentech were interested in hiring" her. Id., ¶ 28. Plaintiff specifically mentions having a "full day interview for a position at a different department at Genentech, with a Senior Scientist who had a very high opinion of the job" that plaintiff was doing at Genentech. Id. Plaintiff ultimately came in second for that position.

Plaintiff claims that she "wrote a number of letters to HR but never specifically mentioned in these letters harassment or age discrimination because [she] was looking for internal transfer and did not want to be a troublemaker." Dkt. 59, ¶ 33. However, plaintiff did "complain to HR that [she] was treated differently" from others in the same line of work, and "did suggest to HR that [her] age could be a reason for a disparate treatment" from Hannoush. Id., ¶ 34-35. Specifically, on April 24, 2008, plaintiff alleges that she "described to HR manager Marsha Underhill" how Hannoush discovered her age and "asked if that could be a reason his treatment of [her] changed sharply." Id., ¶ 35. Also, on April 8, 2009, plaintiff placed a phone call to ER[1] manager Stacey Miller, and "left a message on her machine describing how [Hannoush] discovered that [plaintiff] was older than he originally thought and asking if that discovery was a reason for him to treat [her] the way he did." Id. The next day, Miller called plaintiff and told her that "it was perfectly OK for [Hannoush] to ask the age of [her] children and that there was not a policy violation." Id.

Plaintiff then alleges that she was placed on a "Performance Improvement Plan" ("PIP") on May 12, 2009, and was terminated on July 23, 2009. FAC, ¶ 12-13.

Genentech's motion contains its version of the relevant facts. First, Genentech points out that plaintiff was 50 years old when she was hired, and that Hannoush met with her "three or four times" before hiring her. See Dkt. 44 at 4. Genentech also points out

---

[1] Plaintiff does not indicate what "ER" stands for, but it appears to stand for "Employee Relations."

3

that, during the interview process, Hannoush "made no effort whatsoever to ask about her age" and "made no age-related comments." Id. at 5. Plaintiff began work on May 29, 2007, and Genentech claims that "[a]t no time during the two years they worked together did Hannoush make negative comments or raise questions about her age," and in fact, "[t]he only age-related comment [plaintiff] was aware of had to do with his age, not hers." (Here, Genentech is referring to Hannoush's comment that he could be a competent manager of plaintiff despite his younger age). Id. at 5.

Genentech then describes plaintiff's tenure at the company. It argues that, after initially being excited at plaintiff's having joined the lab, Hannoush "began to recognize significant performance issues" after "two to three months." Dkt. 44 at 5. Specifically, Genentech argues that plaintiff "did not properly plan out experiments or follow established protocols," and had trouble meeting deadlines, which she viewed as mere "guidelines." Id. Genentech also notes that Hannoush's supervisor (Andrea Cochran) also observed plaintiff's "poor presentation skills and other flaws." Id. at 6.

At the end of 2007, Hannoush prepared a performance review based on plaintiff's first six months of work. The review noted that plaintiff had done a good job in certain areas, but that she needed to pay more attention to preparation and documentation. Dkt. 44 at 6. Genentech argues that, when Hannoush presented the review to plaintiff on December 11, 2007, plaintiff "was visibly angry and resistant to his feedback," "argued and tried to refute the criticisms," and "later asked Hannoush to change her performance rating" of "partially meets expectations." Id. Hannoush told her that the rating was final, but he did obtain approval for plaintiff to receive a $2,500 bonus, even though her performance rating made her bonus-ineligible. Id. at 7.

Genentech then argues that plaintiff's performance did not improve in 2008, as she "continued to exhibit significant performance issues," "continued to miss deadlines," and "continued to challenge her 2007 review." Dkt. 44 at 7. Genentech argues that Hannoush "continued to give [plaintiff] feedback concerning her performance and increasingly unprofessional conduct." Id. Then, on May 30, 2008, Hannoush gave plaintiff an oral mid-

4

year review, which identified certain areas of improvement, including "attention to deadlines," "labeling file names, graphs, and slides," and responding to all questions and requests. Id. Hannoush and plaintiff also discussed "that she might not be the right fit for the position and should explore other positions within Genentech." Id. After the meeting, plaintiff began applying for other positions, starting with a position with Yingnan Zhang. However, Zhang "wanted a candidate who could work very efficiently, communicate very well, and be a quick learner," and because she "did not believe [plaintiff] had these skills," she informed plaintiff that "she could not offer her the job." Id. at 8.

Genentech then argues that, after the 2008 mid-year review, plaintiff "was again missing deadlines, mislabeling data, and not accurately or fully responding to emails." Dkt. 44 at 8. On July 22, 2008, Hannoush "requested a meeting to discuss her lack of response to assigned tasks and deadlines." Id. On the same day, plaintiff sent a letter to Marsha Underhill[2] "complaining that the meeting occurred behind closed doors and that Hannoush had been angry." Id. Plaintiff had previously complained to Underhill about her 2007 review and that Hannoush was treating her "disrespectfully." Id. Hannoush spoke to HR and agreed to have the meeting in a conference room and to modify his delivery of feedback, and plaintiff admits that Hannoush "did not yell or speak loudly to her after she complained about it." Id. However, after the meeting, Genentech argues that plaintiff continued to exhibit the same performance issues.

Genentech then alleges that, in November 2008, Hannoush asked plaintiff to "locate clones needed for an experiment," and after first "refus[ing] his request," plaintiff then "became angry and erratic," yelling that "she did not know where they were" and then "smashing lab materials in a supposed attempt to comply with the search." Dkt. 44 at 9. Hannoush reported the incident to Cochran and ER specialist Amy Krymkowski. Plaintiff then "made multiple conflicting excuses" for her behavior, including that she was listening to music on her headphones, which led her to speak more loudly than normal, and that she

---

[2] Plaintiff characterizes Underhill as a "HR manager," while Genentech refers to her as an "ER manager."

5

reacted that way because "she was the victim of a recent beating." Id. On November 17, 2008, Hannoush met with plaintiff and Cochran to discuss plaintiff's performance issues, and plaintiff was told to "exercise professional behavior at work, improve communication skills and active listening, label scientific data, save her data to the server and meet deadlines." Id. at 10. Genentech argues that plaintiff "was not receptive" to this feedback, claiming that, for example, labeling data is a waste of time. Id.

On January 14, 2009, Hannoush and Cochran met with Krymkowski to discuss putting plaintiff on a "performance improvement plan" ("PIP"). Dkt. 44 at 10. Before plaintiff was informed of the PIP, she attended a team meeting with Hannoush and approximately 20 other scientists. Id. According to Genentech, plaintiff was unhappy about not being asked to present at the meeting, and disputed the decision. Id. At the meeting, plaintiff publicly contradicted Hannoush, and discussed data that she had not yet shared with Hannoush. Id. at 11. Hannoush complained via email to plaintiff about her behavior, which caused plaintiff to complain to Krymkowski about Hannoush. Id. However, Genentech argues that plaintiff complained only that Hannoush was not treating her well, and made no reference to age discrimination or any protected complaints. Id. Krymkowski met with Hannoush and department head Wayne Fairbrother on February 5, 2009, to discuss the possibility of a PIP, which Fairbrother supported. Id.

On February 12, 2009, Hannoush and Cochran met with plaintiff to deliver her 2008 performance review (which again was a "partially meets expectations" rating), which again involved complaints of missing deadlines and communicating poorly. Dkt. 44 at 11-12. Plaintiff disputed the rating, contending that she "exhibited strong or exceptional performance in all categories" and deserved an "exceeds expectations" rating. Id. at 12. Genentech claims that plaintiff "displayed an extremely negative attitude" during the performance review meeting, "stating that she did not want to work with Hannoush, could not communicate with him, would never ask for his help, and did not trust him." Id. Plaintiff also accused Hannoush of being a "liar" and of "harassing" her "by asking her to move boxes from a table while he watched." Id. After the meeting, Hannoush requested that HR

6

1  get involved and that plaintiff's complaints be "immediately addressed." Id. at 12. As a
2  result, the PIP was delayed until after the complaints were investigated. Id.
3      Genentech assigned ER manager Stacey Miller to investigate plaintiff's complaints.
4  Miller met with plaintiff, Hannoush, Cochran, and Fairbrother, and on April 7, 2009, Miller
5  completed her investigation. Dkt. 44 at 13. Miller determined that Hannoush "had not
6  engaged in any policy violations" (including that he had not "harassed" plaintiff by asking
7  her to move boxes), that his feedback was appropriate, and that there was room for
8  improvement in Hannoush and plaintiff's communication and in plaintiff's performance. Id.
9  Plaintiff disputed these findings, and Miller provided further clarification, but reiterated her
10 conclusions. Id. Plaintiff then complained to Krymkowski, claiming that she was "being
11 treated differently" than other research associates, and that Hannoush was "retaliating
12 against her for complaining about him." Id. at 14. Miller again investigated plaintiff's
13 claims, but found that Hannoush could not be treating her differently than other research
14 associates (because plaintiff was the only person managed by Hannoush), and further
15 found that plaintiff's workload was generally consistent with that of other senior research
16 associates. Id.
17     On May 12, 2009, after Miller's investigations, plaintiff was placed on a PIP. Dkt. 44
18 at 14. According to Genentech, plaintiff was "argumentative" at the meeting. Id. at 14-15.
19 Genentech claims that plaintiff continued to exhibit the same performance issues during the
20 60-day PIP period, leading Hannoush, Cochran, Fairbrother, and Krymkowski to agree with
21 the decision to terminate plaintiff. Id. at 15. On July 23, 2009, Hannoush and Cochran met
22 with plaintiff to inform her of the decision. Id. Genentech argues that plaintiff "immediately
23 stood up and rushed from the meeting," "refused to accept her final paycheck, grabbed a
24 book and folder from her desk and then sprinted around the Genentech campus and threw
25 materials to the ground, evading security employees." Genentech argues that plaintiff
26 admits to retaining "thousands of pages of Genentech's scientific information" (even though
27 she was obligated to return all confidential information) and "sent disturbing emails until
28 instructed to stop by legal counsel." Id. The emails cited by Genentech read "when you

joined forces with my physical abusers to destroy my hope. I only wish I could forget you existed." and "Good luck with Lucy she is a sweet girl. Job will be job for her and no more, and this is what you need." Id.

Plaintiff filed suit on August 3, 2012, then filed the operative FAC on November 27, 2012.  The FAC alleges six causes of action: (1) discrimination under the Age Discrimination in Employment Act ("ADEA"); (2) age discrimination under the California Fair Employment and Housing Act ("FEHA"); (3) retaliation under the ADEA; (4) retaliation under FEHA; (5) failure to prevent discrimination under FEHA; and (6) violation of California public policy.  Genentech moves for summary judgment on all six causes of action.

## DISCUSSION

A.   Legal Standard

A party may move for summary judgment on a "claim or defense" or "part of . . . a claim or defense." Fed. R. Civ. P. 56(a).  Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Id.

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Material facts are those that might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. Soremekun v.Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).  On an issue where the nonmoving party will bear the burden of proof at trial, the moving party may carry its initial burden of production by submitting admissible "evidence negating an essential element of the nonmoving party's case," or by showing, "after suitable discovery," that the

8

"nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1105-06 (9th Cir. 2000); see also Celotex, 477 U.S. at 324-25 (moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case).

When the moving party has carried its burden, the nonmoving party must respond with specific facts, supported by admissible evidence, showing a genuine issue for trial. Fed. R. Civ. P. 56(c), (e). But allegedly disputed facts must be material – the existence of only "some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-48.

When deciding a summary judgment motion, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. Id. at 255; Hunt v. City of Los Angeles, 638 F.3d 703, 709 (9th Cir. 2011).

B.   Legal Analysis

Plaintiff's first two asserted causes of action are for ADEA discrimination and FEHA age discrimination, respectively. Under the ADEA, it is unlawful for any employer to take an adverse action against an employee "because of such individual's age." 29 U.S.C. § 623(a). "[A] plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." Gross v. FBL Fin. Servs., 129 S.Ct. 2343, 2352 (2009).

Under FEHA, it is an unlawful employment practice for an "employer, because of the race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex, age or sexual orientation of any person to . . . discriminate against the person in compensation or in terms, conditions or privileges of employment." Cal. Gov't Code § 12940(a).

Courts generally employ the McDonnell Douglas burden-shifting analysis in age discrimination cases. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). Accordingly, in the usual case, a prima facie case of age discrimination arises

when the employee shows: (1) at the time of an alleged adverse employment action, the employee was 40 years of age or older; (2) an adverse action was taken against the employee; (3) at the time of the adverse action the employee was satisfactorily performing her job; and (4) some other circumstance suggesting a discriminatory motive was present. See Guz v. Bechtel Nat'l, Inc., 24 Cal. 4th 317, 355 (2000).  Notably, the fact that plaintiff's evidence constitutes a prima facie case will not always support a finding of discrimination or avoid summary judgment.  The probative value of plaintiff's evidence must be strong enough to overcome any innocent reasons given by the employer for the action taken. See, e.g., Guz at 362.

Once a plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to offer a legitimate, nondiscriminatory reason for the adverse employment decision.  See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142 (2000). An employer's reasons need not rest on true information.  Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1063 (9th Cir. 2002).  Instead, courts require only that the employer "honestly believed its reasons for its actions, even if its reason is foolish or trivial or even baseless." Id. (citation and quotation omitted).

If the employer meets this burden, the plaintiff must then raise a triable issue of material fact as to whether the defendant's proffered reasons for its actions are a mere pretext for unlawful discrimination.  Hawn v. Executive Jet Mgmt., 615 F.3d 1151, 1155 (9th Cir. 2010).  A plaintiff may do this by producing either direct evidence of discriminatory motive, which need not be substantial, or circumstantial evidence that is "specific and substantial" evidence of pretext.  Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1221-22 (9th Cir. 1998).  If the plaintiff succeeds in demonstrating a genuine issue of material fact as to whether the reason advanced by the employer was a pretext for discrimination, then the case proceeds beyond the summary judgment stage.  See Reeves, 530 U.S. at 143.

The parties do not dispute that plaintiff has met the first two elements of a prima facie age discrimination case.  Plaintiff was 50 years old at the time that she was hired, and suffered an adverse action when she was placed on a PIP, and again when her

employment was terminated.  However, the parties do dispute element (3) (whether plaintiff was satisfactorily performing her job) and element (4) (whether there were some circumstances suggesting a discriminatory motive).

As to element (3), Genentech points to the performance problems that were noted in her 2007 year-end review, her 2008 mid-year review, and her 2008 year-end review.  As mentioned above, plaintiff disputed her performance rating after each of these reviews, as she believed that she had earned a rating of "exceeds expectations."  Plaintiff also challenges a number of Genentech's specific allegations, claiming that she "met all the deadlines" and that she was not given any guidelines regarding labeling.  See Dkt 59, ¶ 43.  However, plaintiff simultaneously attempts to explain her missing of deadlines, claiming that she was sick on a number of instances, and that she was given "unrealistic assignments."  Id., ¶¶ 41, 43.  Also, plaintiff does not dispute certain other performance issues identified by Genentech.

For instance, as mentioned above, Genentech describes a November 2008 incident when plaintiff was asked to locate clones for an experiment, and plaintiff became "angry and erratic" and began "smashing lab materials in a supposed attempt to comply with the search."  Plaintiff does not dispute these allegations, and argues only that Hannoush's treatment of her had become "so hostile" that she "did not question him," and that she "had to get down on [her] knees to rummage through the refrigerator" to find the clones.  Dkt. 59, ¶ 44.

Genentech also describes an incident in January 2009 when plaintiff "contradicted [Hannoush] publicly in front of the team" at a meeting.  See Dkt. 44 at 11.  Plaintiff argues that she tried to show Hannoush her progress before the meeting, but that he "brushed [her] off and appeared disinterested."  Dkt. 59, ¶ 46.  However, plaintiff does not challenge the substance of Genentech's allegations, nor does she challenge Genentech's claim that, after being told that her behavior was inappropriate, she stated that she would be "happy to apologize" about the incident.  Dkt. 44 at 11.

Finally, Genentech points to feedback provided by Hannoush's supervisor (Andrea

1 Cochran), who reported that plaintiff had "a tendency to drift off topic in presentations" and that she "communicates poorly in the face of conflict." Dkt. 44 at 12. In response, plaintiff identifies one instance when her manager (presumably referring to Hannoush) told her that her presentation "was good," and argues that her "pre-Genentech and post-Genentech presentation history is quite outstanding." Dkt. 59, ¶ 43.

Overall, even if the court considers only the undisputed evidence of plaintiff's job performance, it is inclined to find that plaintiff was not performing her job satisfactorily at the time of the adverse actions. However, the court will proceed as if plaintiff has met element (3) of a prima facie age discrimination case, in order to fully address all of plaintiff's arguments.

Element (4) of a prima facie age discrimination claim requires plaintiff to show some circumstance suggesting that a discriminatory motive was present. Here, plaintiff focuses on a single incident: in July or August of 2007, plaintiff alleges that Hannoush "discovered that [plaintiff] had adult children aged 24 and 26," and "appeared shocked by this answer." See Dkt. 59, ¶ 9. Plaintiff assumes that, prior to this incident, Hannoush believed her to be younger than her actual age. However, there is no basis for this assumption, as it appears to be based on plaintiff's own assessment of her appearance (alleging in the FAC that she "appears much younger than her age") and the assessment of other, unidentified individuals (alleging in her declaration that she "was told by other people that I look like I am in my 30s"). See Dkt 23, ¶ 6; Dkt. 59, ¶ 6. Plaintiff provides no basis for alleging that Hannoush believed her to be younger than her actual age. To the contrary, the evidence shows that, even at the time that she applied for the position at Genentech, Hannoush would have known that plaintiff had obtained a Ph.D in Russia, and that she had nearly 12 years of experience working at the University of California, San Francisco. See Dkt. 64-2, Ex. 27 (plaintiff's "CV submitted to Genentech," cited by plaintiff in Dkt. 59, ¶ 6). In fact, plaintiff admits that the position that she applied for was originally listed as a "research associate" position, but was changed to a "senior research associate position" after she was offered the job. Dkt. 59, ¶ 7. Plaintiff uses this fact as evidence that Genentech was

12

not "look[ing] to hire a very mature person," but it also shows that Genentech was aware that she was not young and chose to hire her anyway. Plaintiff does not dispute that she was interviewed face-to-face by Hannoush, nor does she allege that Hannoush inquired about her age or made any age-related comments during the hiring process. The only alleged age-related comment made by Hannoush is a statement that "his being a young manager and [plaintiff] being older than him does not preclude him from being an efficient manager of an older person." Dkt. 59, ¶ 23. This comment suggests that Hannoush viewed his younger age as a possible disadvantage, as he explained that he could competently manage plaintiff in spite of being younger than her. Simply put, plaintiff has not presented any direct evidence of a discriminatory motive on Genentech's part.

Moreover, even if plaintiff had provided some direct evidence of discriminatory motive, it would be weakened by the fact that the same person was responsible for her hiring and her firing, thereby creating a "strong inference" that there was "no discriminatory motive." See Bradley v. Harcourt, Brace, and Co., 104 F.3d 267, 270-71 (9th Cir. 1996). While the gap between hiring and firing in Bradley was only one year, the Bradley court also cited with approval a case involving a gap of "less than two years." See id. at 271 (citing Lowe v. J.B. Hunt Transp., Inc., 963 F.2d 173 (8th Cir. 1992)).

Plaintiff does attempt to provide some indirect evidence of discriminatory motive, alleging that Hannoush "replaced [her] with a young female." Dkt. 59, ¶ 21. Plaintiff's allegation is based on a review of the LinkedIn profile of Karen Stanger, which, according to plaintiff, "suggests that she is at her late 20s-early 30s." Id. Genentech responds by arguing that plaintiff "has no competent evidence [] to show the age of Stanger," "nor any foundation for the speculation that Stanger performed any work which would have been performed by Krylova." While the court agrees that all of plaintiff's evidence of discriminatory motive is unduly speculative, and thus insufficient to raise a triable issue of fact as to whether Genentech acted with a discriminatory motive, the court will assume that plaintiff can meet element (4) of a prima facie discrimination case, in order to fully address the remainder of plaintiff's arguments.

13

Assuming that plaintiff could establish all four elements of a prima facie discrimination case, the burden would then shift to Genentech to proffer "legitimate, non-discriminatory reasons" for the adverse actions. Here, Genentech relies on the same evidence that it offered to show that plaintiff was not satisfactorily performing her job at the time of the adverse actions. Specifically, it is undisputed that plaintiff was unable to maintain a positive working relationship with Hannoush, as evidenced by the November 2008 incident involving clones for a research experiment, and the January 2009 team meeting. Genentech cites a number of other performance-related issues (which are discussed in the "background" section of this order), only some of which are disputed by plaintiff. Overall, the court finds that Genentech has met its burden to show a legitimate, non-discriminatory reason for the adverse actions.

The burden then shifts back to plaintiff to raise a triable issue of material fact as to whether the defendant's proffered reasons for its actions are a mere pretext for unlawful discrimination. The court notes that a plaintiff's subjective belief that her termination was unnecessary or unwarranted is not sufficient to create a genuine issue of material fact. See Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1028 n.6 (9th Cir. 2006). In addition, "[a] plaintiff cannot defeat summary judgment simply by making out a prima facie case." Wallis v. J.R. Simplot Co., 26 F.3d 885, 890 (9th Cir. 1994) (quoting Lindahl v. Air France, 930 F.2d 1434, 1437 (9th Cir. 1991)). Rather, the plaintiff must produce "specific, substantial evidence of pretext." Id. (quoting Steckl v. Motorola, Inc., 703 F.2d 392, 393 (9th Cir.1983)).

Here, plaintiff relies on the same evidence that she cited as evidence of discriminatory motive. However, the court has already found plaintiff's evidence to be based on undue speculation. Plaintiff alleges that Hannoush was "very specifically disturbed by" her age, and that he "started planning to fire [her] after he discovered [her] age," but plaintiff provides no evidence that Hannoush ever believed her to be younger than her actual age, and no evidence that Hannoush's actions were in any way motivated by plaintiff's age.

14

Plaintiff's evidence of pretext is even weaker than Nidds v. Schindler or Nesbit v. Pepsico, both of which involved actual negative comments about age ("we don't necessarily like grey hair" in Nesbit, and a comment about getting rid of all of the "old timers" in Nidds), and both of which resulted in affirmances of summary judgment against the plaintiff, because the comments were "not tied directly" to the terminations. Nidds, 113 F.3d 912, 919 (9th Cir. 1996); Nesbit, 994 F.2d 703, 705 (9th Cir. 1993). Overall, this case is most analogous to Hersant v. Dept. of Social Services, in which the court held that the plaintiff had "raised triable issues concerning whether the actions of [defendant] were reasonable and well considered. A trier of fact could find either that they were or they were not. What a trier of fact could not reasonably conclude, however, was that [defendant's] stated reasons were implausible, or inconsistent or baseless; it would not be reasonable to conclude that they were pretextual and used merely to veil an act of age discrimination." 57 Cal. App. 4th 997, 1009 (1997). In this case, plaintiff generally complains that she was treated more harshly than other employees, and that Hannoush distorted her record of performance in order to "accomplish his objective to get [her] terminated." Dkt. 59, ¶ 25. Even assuming that plaintiff is correct, at best, she (like the Hersant plaintiff) has a case that her termination was unreasonable, but not that it was the result of age discrimination. For that reason, the court finds that plaintiff is unable to raise a triable issue of material fact as to whether the defendant's proffered reasons for its actions are a mere pretext for unlawful age discrimination, and as a result, defendant's motion for summary judgment is GRANTED as to plaintiff's ADEA age discrimination claim and FEHA age discrimination claim.

Plaintiff's third and fourth causes of action are for retaliation under the ADEA and retaliation under FEHA, respectively. In order to establish a prima facie retaliation case under either statute, plaintiff must show (1) that she engaged in protected activity, (2) that she suffered an adverse employment action, and (3) that a causal link exists between those two events." See Steiner v. Showboat Operating Co., 25 F.3d 1459, 1465 (9th Cir.1994).

Genentech challenges only elements (1) and (3). As to (1), Genentech attempts to

parse the substance of plaintiff's complaints (made to HR manager Marsha Underhill on April 24, 2008, and to ER manager Stacy Miller on April 8, 2009), arguing that plaintiff was merely making "vague musings" about discriminatory behavior, rather than actually "put[ting] anyone on notice that she was opposing an unlawful practice." However, plaintiff does allege that she "asked" both Underhill and Miller if Hannoush's discovery of her age "could be a reason his treatment" changed sharply. While these statements do not directly accuse Hannoush of age discrimination, the court finds that they are sufficiently clear in implying that Hannoush was discriminating against her based on age. See, e.g., EEOC v. Crown Zellerbach Corp., 720 F.2d 1008, 1013 (9th Cir. 1983) (finding that "[c]ourts have not imposed a rigorous requirement of specificity in determining whether an act constitutes 'opposition' for purposes" of a retaliation claim). Thus, the court finds that plaintiff has established element (1) of a prima facie retaliation case.

However, plaintiff has failed to establish (or even allege) that any decision-makers knew about her complaints. See Keenan v. Allan, 91 F.3d 1275, 1281 (9th Cir. 1996) (plaintiff "fails to allege a triable issue of fact as to whether Allan was even aware of her complaint to the CJC prior to the elimination of her position"). Plaintiff does not allege that Hannoush, Cochran, Fairbrother, Krymkowski, or any other decision-maker was aware of her age-related complaints prior to either of the adverse actions. And while plaintiff did complain directly to Hannoush at her February 2009 performance review (before the PIP was implemented), her complaints at that meeting were that Hannoush was a "liar" who had "harassed" her – not that he had discriminated against her based on age. Plaintiff's failure to establish that any decision-maker knew of her protected activity prevents her from showing a causal link between the protected activity and the adverse actions. Thus, plaintiff fails to establish element (3) of a prima facie retaliation case. Moreover, even if plaintiff could establish that any decision-maker knew of her complaints, she has not provided any evidence showing that the adverse actions were the result of unlawful retaliation, as opposed to being the result of plaintiff's performance issues. And further, even if plaintiff were able to establish a prima facie retaliation case, Genentech has

articulated legitimate, non-discriminatory reasons for the adverse actions, and plaintiff has failed to establish that those reasons were pretextual. For those reasons, the court finds that defendant's motion for summary judgment must be GRANTED as to plaintiff's ADEA retaliation claim and FEHA retaliation claim.

Plaintiff's fifth cause of action is for failure to prevent discrimination under FEHA, but given plaintiff's failure to raise a triable issue of fact regarding her underlying discrimination claims, the court finds that defendant's motion for summary judgment must be GRANTED on this claim. See, e.g., Trujillo v. North County Transit Dist., 63 Cal. App.4th 280, 288-89 (1998) (finding no "failure to prevent" claim "where there has been a specific factual finding that no such discrimination or harassment actually occurred.").

Finally, plaintiff's sixth cause of action is for wrongful termination in violation of public policy. Genentech argues that this claim is derivative of plaintiff's other claims, and plaintiff does not dispute this assertion, offering only that this claim does "not fail because the discrimination and retaliation claims do not fail." The court finds that this claim is indeed derivative of plaintiff's other asserted claims, and for that reason, defendant's motion for summary judgment is GRANTED as to plaintiff's sixth cause of action.

## CONCLUSION

Defendant's motion for summary judgment is GRANTED on all of plaintiff's claims. The Clerk shall close the file.

**IT IS SO ORDERED**.

Dated: April 14, 2014

PHYLLIS J. HAMILTON
United States District Judge